Good morning. May it please the Court, my name is Ryan Stipek from Reinhart-Berner-Vanduren, and I represent the New York State Teachers' Retirement System, which I'll refer to as Teachers this morning. Teachers is the vehicle through which the State of New York manages the provision of retirement and other benefits for its nearly for hundreds of thousands of retirees and active New York State teachers. One key aspect of this is that it manages and invests the money in the fund so that it can grow over time, and they can pay those benefits. And that's where teachers became involved here, is they are a class member of an invest, they are an investor in the Mercury Interactive Corporation, and one of the investors harmed by the options backdating fraud at Mercury Interactive. Teachers appeals the award of attorney's fees in this case because the opinion below applied a rigid formulaic application of the 25 percent benchmark, a benchmark that we believe is not viable and inconsistent with the PSLRA and the experience since the passage of the PSLRA in 1995. The district court applied the benchmark. Did you make that point to the district court? I believe we did make that point to the district court. I mean, in terms of, you know, what, no longer viable after the what, PLSRA? Yes, the PSLRA. In the objection, teachers certainly made the point that the PSLRA had changed the landscape of securities class actions, and that the PSLRA had driven down fee awards in securities class actions, and that this had really been a revolution in this area. It didn't use the specific words that the benchmark shouldn't be extended to securities class actions, but it's our position that the issue was adequately raised below. Well, you did mention that at least at pages 21 and 26, where you talk about the dramatic changes in the landscape with this statute. But it seems to me that you came to the party rather late and didn't even go to the hearing part of the party. Does that make any difference to your opportunity to bring this issue to us? Well, I think it does make a difference in the First is that in these class actions, class members, unnamed class members such as teachers, the incentive there for them to be actively involved is not the same as in typical adversarial litigation. Now, so in addition, under this court's waiver precedent, this is a purely legal issue that the Court can and should exercise its discretion in addressing. When you say this, what are you referring to? The benchmark issue. The 25 percent benchmark? How could the question of 25 percent be purely a legal question? There aren't any percentages referred to in any statutes anyplace, are there? Not in statutes. And as I read your briefs, you both amassed an impressive list of district court and district attorneys, which different attorneys either got 25 percent or got something less than 25 percent, depending on which side you were favoring. Sure. That doesn't that doesn't sound like a like a question of law to me. I think that's a separate issue than the question of whether this Court's benchmark jurisprudence should be extended into the securities class action realm in the wake of the PSLRA. You want to make an argument that the PSLRA absolutely bars this Court from allowing a 25 percent benchmark. Is that right? No circumstances? It is our view that having a 25 percent benchmark in securities class actions is inconsistent with the PSLRA. Okay. Absolutely. As a matter of law. Correct. Okay. And what percentage would be permissible under the PSLRA? Well, we believe that the that the Court should conform its jurisprudence to what the rest of the country essentially does. They don't other courts don't have a benchmark, especially a essentially what can be construed as a fixed benchmark in this circuit. Have other courts awarded 25 percent? After courts consider various factors. Has any court awarded 25 percent in a PSLRA case? Sure. Then it cannot be an absolute, absolutely forbidden by the PSLRA, can it, if that's what we're to look to. An award of 25 percent cannot be absolutely forbidden. You're saying it's the benchmark that's the problem. It's having a benchmark to begin with, rather than just an empty vessel every single case. Correct. The benchmark itself is the issue, is the problem. And we think that's evident in this case in the way the district court decided the case. From its very short. The benchmark is simply a presumption, right? It's not a guarantee there's an amount, right? That's correct. Under this Court's precedent, the 25 percent benchmark, there's really two strains of cases, and they somewhat diverge. On the one hand, we have cases decided by this Court that say, award the 25 percent benchmark absent special circumstances. And that's the position that lead counsel took below and takes now. And then there's other cases like Vizcano, where the Court says, well, no percentage award should be provided without looking at all of the relevant circumstances. So you have these two sort of divergent strains under the Court's benchmark jurisprudence. And what we're saying is that in securities class actions only, the Vizcano strain, where the Court needs to look at all of the relevant circumstances of the case, that that strain should keep going, and that the 25 percent benchmark, which can lead to arbitrary results and windfalls where class members are not always going to be as engaged as teachers is in this case. Exactly what in the PSLRA is the benchmark concept inconsistent with? Well, it's inconsistent with the intent of the PSLRA. There's a provision in there that's titled restriction on attorney fee awards. That's paraphrasing. It's actually restrictions on payment of attorney's fees and expenses. It was passed six years after the benchmark was initiated in this Court in the Paul Johnson case. And so it's a clear congressional intent. But what in there is inconsistent with Paul Johnson? It's the manner in which it is applied. And if you look indeed to the legislative history that we cited in the brief, there was a clear intent that Congress would have courts avoid having a fixed percentage without the searching and thorough analysis. And it's our point that the benchmark really squelches that searching and thorough analysis. Well, you'd have us start with a benchmark of zero. I mean, there's going to be a presumption either way. One is a zero presumption, and you have to work your way up. And the other is a 25 percent presumption from which you presumably could work your way down or up. Well, I don't think that's the case. I mean, in these situations, lead counsel is still going to be submitting their fee motion with a percentage that they feel is accurate, it should be awarded. And then what the district court needs to do in its role as fiduciary to the absent class members is even absent objections, the district court needs to scrutinize that fee request to assure that no windfall has been avoided. So I don't think we urge that a zero percent be the benchmark and you work your way up. I think what we would urge the court adopt for these types of cases is that, as in Biscayne, in which the court said district courts must refer to the size of the settlement fund, I think there's certain factors that district courts need to look at in cases, such as the size of the settlement fund, such as awards in comparable cases. And so what we would urge is that the court adopt for securities cases what courts are doing in other circuits around the country. The Goldberger Court is a perfect example. The Second Circuit in 2000 in the Goldberger case held that, no, a benchmark is inconsistent with the PSLRA. Having a fixed percentage absent special circumstances is inconsistent with the desire to restrict attorney fee awards. That 25 percent benchmark was based on non-securities cases, common fund cases in general, and was based on cases long before in the 60s and 70s, based on those cases long before the passage of the PSLRA. Now we have the experience under that Act of cases of involvement of institutional investors driving down the fee percentage of awards. You see, here's my problem with your argument. All that, you're talking about other common fund cases, but the purpose still is to arrive at a reasonable fee, right? That's correct. And that's the same thing under PSLRA, isn't it, to arrive at a reasonable fee? Well, I would ---- You're saying that a reasonable fee under the PSLRA is different than a reasonable fee under some other common fund? There was certainly an intent in passing the PSLRA, and that provision in particular must be given some meaning so that there is an ---- All it says is, you know, fees and expenses shall not exceed a reasonable percentage.  That's right. There's nothing about, you know, and it shouldn't be ---- and it should be less than other common fund cases, does it? It does not specifically say that, no. And we've previously said that 25 percent can be a reasonable fee and ought to be ---- and can be a benchmark, a starting point, a presumption from which a district court could depart probably usually downward, not usually not upward. Now, Congress is supposed to be aware of our decisions, right, when they enact this legislation? That's correct. And Congress is also aware of the fee percentages in securities cases being excessive, which includes knowing that this 25 ---- Is there anything in that legislation that disapproves of our decisions? Well, I think the need to include that in the legislation at all is one indication that that legislation has to mean something. Well, almost every statute that permits fees permits a reasonable fee. None of them allow indefinite fees, large fees, you know, 50 percent fees. There are statutes that have percentages in them. This one doesn't. The General Codd should have said something like this, you know, the court shall determine a reasonable fee in these PSRA cases and it shall select either the ---- The General Codd should award the lower of either a reasonable percentage of the recovery or the lodestar amount, right? It could have said that. Or it could have said no greater than 15 percent of the ---- or 18 percent was your number, but, I mean, it could have done that and didn't. It's not at all clear that when Congress said you can award reasonable fees, that we are to read into that reasonable fees in contrast to the prior practice of the Ninth Circuit. That's certainly correct. We think the better rule that is more consistent with the congressional intent is to not extend that benchmark jurisprudence into securities cases. And we think that better rule is ---- But the problem is we wouldn't be extending it. What you're asking us to do is to withdraw it from the, you know, securities cases. And I'm not ---- I'm not convinced a three-judge panel can do that, because the way that case is written, it applies to all common-fund cases, right? So aren't you asking us to restrict that case? Because it certainly ---- I think we are asking in light of the congressional intent and the better weight of the authority following the PSLRA, that would indicate that a benchmark, particularly a rigid benchmark, which would require special circumstances to get off of the benchmark, and that's the standard that lead counsel urges here. And that's basically the standard that the district court applied below. And we can talk about some of the additional problems that we have with the benchmark. And we believe that even if you don't buy the notion that the benchmark should be not extended to securities class actions, we think the case should still be reversed based on the district court's application of the benchmark and the failure to consider a number of factors that Ninth Circuit precedent indicates that even under the benchmark,  district courts should consider. Counsel, you've used up your time. We're all but a few seconds. Thank you. Thank you. We'll hear from Mr. Gottlieb. May it please the Court, Lew Gottlieb on behalf of the Mercury Pension Fund Group. I believe in this case we have two issues. The first issue, as we've been discussing for the last 15 minutes, is whether the PSLRA requires this court to basically go back upon its 20-year history of having a benchmark and to change a well-established Ninth Circuit law. And I think the only thing I'd like to add to that discussion is the fact that I believe that in powers of the ICANN, this court has already considered the PSLRA, the language requiring reasonable fees and costs, and stated that the benchmark applies in that case. So in effect, what an appellant is asking this court to do is to overturn established Ninth Circuit law, not to extend the law, but to overturn it. The second issue before this Court is basically the issue of what attorney's fee should have been given in this case. And the appellant takes the position that the fee should be no more than 18 percent. And the district court, having also the third procedure, you know, that's raised here, whether the district court follows the correct procedure, appropriate procedure. In awarding the attorney's fee? In considering the fees, yes. Well, that is correct, Your Honor. As to the amount of the attorney's fee, I think that it would be hard put to say that the district court abused its discretion in granting a 25 percent fee under these circumstances. In terms of the procedure, I believe what they are, in effect, doing is quibbling with the amount of detail that the lower court put onto the record. Oh, no, I don't – that's not the challenge at all. I think the real challenge is, you know, whether class members were given sufficient time to consider the application. Would they have a week? Your Honor. You know, in an ordinary case, I mean, if you're just talking about attorney's fees of $20,000, $30,000 or less, I mean, you've got to give 21 days' notice, right, and time to respond to all that. And you give, what, a week? I don't think that's a fair way of phrasing it, Your Honor. What happened in this case in terms of the notice is that notice went out to all class members, I would think, about more than two months before the hearing. All the notice says is we're going to apply for fees. That's all. Let's say 25 percent fees. Right. But, you know, it doesn't tell you, you know, how you get there or, you know, how much work you did or what the claim is based on. I mean, it's not, you know, in a motion, you get the basis of the motion, right? In the motion, there was some more detail. That is correct, Your Honor. I would hope so. The – in the notice, it did say in general what kind of work was done in the case. It did say the amount that was being recovered, and it did say the amount of fees and expenses that we would be asking for, although at the end of the day, we asked for only half of the expenses that were in the notice. The procedure that we used to have the attorneys' fee motion made after the time for objection is a procedure that has been well established in courts in the Ninth Circuit and in courts throughout the country. And I think that appellant would agree that that is the procedure that has been used in the vast majority of class action settlements, both before and after Bill 23H went into effect. Now, there are a couple of courts, not too many, that have addressed that. The one court that has addressed it most head-on is the Bisis Court in the Southern District, where, unlike here, the objector actually made an objection in a timely fashion to the notice provision and told the court, you know, we think that we didn't have enough time. And the judge in that case found that while – I think he said while this may not be the best way, it is certainly an effective way and an acceptable way of giving notice. And as an aside, that was a $65 million settlement, and the court awarded a 30 percent attorney's fee. So I believe that this procedure is well established, has been used in dozens, if not hundreds, of class action settlements. And while there are two procedures that it may be possible and perfectly acceptable, I believe that the procedure that was used in this case was appropriate. I'd like to address briefly just some of the items that Appellant raised in their brief regarding what I'd call them – what I would call quibbling with what the district court said or did not say on the record. I believe that in the Ninth Circuit the curve factors are applied. Now, the district court did not do a formal recitation of the curve factors, but I believe that in the hearing and in the approval for the attorney's fee, he, in fact, addressed many, if not most, of those factors. For example, time and labor required. The Court said, the Court notes that this matter was litigated extensively, that it was certainly not a situation where counsel were not required to extend significant effort. In fact, the contrary is true. And this is at page 14 through 16 of the record. And the issue of novelty. The Court stated specifically this matter involves novel issues. On the issue of skill, requisite to perform legal services properly, the Court says the Court does not believe that the efforts of counsel fell below the accepted standard. On the issue of customary fee, the Court referred to the 25 percent benchmark. As to whether the fee is fixed or contingent, he didn't specifically say on the record that the fee is contingent, but I think that is obvious. There is a factor regarding time limitations imposed by client circumstances. I don't think that is relevant. The eighth factor is the amount involved and the results obtained. And I think that that is probably the key factor. And the Court said it is a particularly significant settlement given the amount of money involved. It's one of the largest in a backdating case which this Court is aware of. It could be argued that a higher reward might be justified given the very beneficial outcome. So clearly, the Court did take the result obtained by counsel into consideration. With respect to the experience, reputation, and ability of the attorneys, I think that is also included in his statement that the Court does not believe that the efforts of counsel fell below the accepted standard. And the Court clearly saw also who the opposition was in this case. Opposition counsel included Paul Weiss, Gibson Dunn, Heller Erman. There were, I think, eight different law firms that were part of the opposition. The fact of the undesirability of the case, I think that goes into the risk. This was an extremely risky case when it began. There was no established precedent in option backdating cases, no record of success. This was a case that was so risky that there was one lead plaintiff movement, just one. You have an easier, larger case. There are numerous lead counsel and lead plaintiffs who are eager to participate. Here, there was one. Also, in terms of the risk, I think we should note that the case was dismissed. We argued before Judge Fogel. There were, as I said, seven motions to dismiss that were brought, and they were all granted. And I think I should also note that the settlement achieved of $117.5 million, to put that into context, was achieved with a case that was dismissed. It was achieved being six times larger at the time than any other options backdating case. It was achieved that it was four times larger than the SEC got in the settlement in a case before the same judge, so he was well familiar with it. The result, I think, was simply outstanding. There was also 26 percent of damages, which in a securities case is an extraordinary result. One of the other core factors is the nature and length of professional relationship with client. I think that is not applicable. And lastly, awards in similar cases. And yes, I will concede that Judge Fogel did not on the record do a lengthy analysis of how this case compares to all of the other cases, but he did say that he reviewed all of the papers of objectors and all of the papers of the plaintiff with respect to the objection, and those papers were filled with similar cases. So I believe that it is clear that he considered that factor as well. I see that my time is not up, but I think I would prefer to ask the Court if you have any questions. I don't believe that we do, Mr. Gottlieb. Thank you very much. And although your time expired, we'll give you one minute for rebuttal. I think I had seven seconds left or something, but just quickly, I think the lead counsel's response here is indicative of the problem with the district court's opinion in that lead counsel is supplying all the reasoning and the factors that the district – that there's no indication in the record that the district court actually considered these factors. It didn't consider the Lode-Starr crosscheck. It didn't consider the most important factor, comparable cases. It didn't consider the market check and a host of other factors. And in the several paragraphs of the opinion, there's reference to novel issues. We don't know if that means risk or whether it means the intervention of Mississippi Retirement System that tried to intervene in the case because it wanted to be lead plaintiff. So there's simply not the fact finding or the indication in the record that many of the factors that lead counsel cites here today were actually considered by the district court. And for that independent reason, for failing to consider those various factors, this court's precedence dictates reversal and remand. Thank you. Thank you, counsel. We appreciate the arguments, and the case is submitted, and we will stand adjourned for this morning. Thank you. All rise.
judges: Tashima, Graber, Bybee